We begin with our first case, Gonzales v. Hasty. Good morning, Your Honors, and may it please the Court. Cleland Welton of Quinn Emanuel Urquhart & Sullivan, pro bono counsel for Plaintiff Esteban Gonzales. Mr. Gonzales was held in solitary confinement for more than three years. He was locked in a cell for 23 hours a day. He was deprived of exercise and natural light. He was prevented from seeking treatment for dental issues that were so severe that he had trouble sleeping. As he testified, however, the worst and most unbearable part of this was not knowing if or when he would ever be released. And that was because the defendants here systematically deprived him of the opportunity to have a hearing and to present his case for why he should be released from solitary. The question in this case is ultimately whether Mr. Gonzales has a remedy for these violations of his constitutional rights. And the answer to that question must be yes. This is a damage-or-nothing case, and a Bivens remedy is necessary to ensure that prison officials have an incentive to comply with their constitutional obligations. Now, your client concedes that his Fifth Amendment claim presents a new context for Bivens purposes. Yes, Your Honor. So conceding that, can you address why a special factors analysis and an alternative remedies analysis would lead to the conclusion that a Bivens remedy is appropriate here? Sure, Your Honor. So the first thing is that the Supreme Court's most recent decision in Ziegler is nothing at all like this case. There are some superficial similarities in that the defendant is the same, involved a Fifth Amendment claim. But that was a case where the FBI Director and the Attorney General were defendants. High-level policy. This is nothing like that. This is a single defendant, or a set of individual defendants involving not broad policies, nothing about counterterrorism or national security, but it's rather about individual violations of his right to have a hearing, his right to have adequate medical treatment. So there's nothing like Ziegler here. And the special factors that the District Court cited and that the defendants cite here don't support removing a Bivens action. The first one is the PLRA. But when Congress enacted that, what it was responding to was not the existence of Bivens itself, but rather the fact that the Supreme Court had held that prisoners did not have to exhaust their administrative remedies. And so what Congress does, and this is clear from the legislative history that we cite in our briefs, what Congress does is it says you have to go through the remedies, you have to go through the administrative system, and then if you do those and you still haven't gotten relief, then at that point, at that point you can bring a Bivens claim. So Congress adopts Bivens as sort of the endpoint of the whole remedial scheme. And so the PLRA is not a replacement for or a congressional statement that there should be no Bivens claim, but rather But it is a context in which Congress is focusing on the problem of prison abuse and how to remedy it, and they don't specify that the remedy should extend beyond this Carlson. They don't go on to add money damages to specify money damages remedies for different sorts of prison abuse claims. But that's true. I think that's the government's argument. That's their argument, but that's wrong. It's wrong because Congress assumed in the background that there was a Bivens claim. And so they didn't need to enact a new  Carlson, you can get money damages for violations of constitutional rights if you're a prisoner and you and you can exhaust your administrative remedies first. So they say, do the administrative remedies, then you can bring your Bivens claim. Well, Your Honor, the district court said that, but the only remedies that exist or could possibly exist are all forward-looking. It's the habeas statute or maybe an injunction or something, but those are all forward-looking. And they can't. Well, maybe not, but what all the statutes do is say going forward, maybe you can get a habeas remedy, maybe you can get an injunction, but they don't do anything for all the past violations, all these past losses. And the only cases that the government cites on this point are Bush and Schweiker. And both of those Supreme Court cases involved the remedies that they said that didn't allow for additional consequential damages. But what they do allow for is in Bush, the court says you have an adequate remedy because you can get your job back. And as a government employee, he gets his job back and he gets back pay. And Schweiker? There's not a Supreme Court case on that point. There's a Seven Circuits case in Engle that says that. But there's no Supreme Court case that stands for the proposition that the government wants to say. But as I said, Bush allowed back pay. The gentleman got his job back retroactively. And Schweiker, the Social Security claimant, got their benefits back. So they got monetary relief for the past violations of their rights. But in this case, the government is saying, no, you don't get any remedy at all for all these past violations. You were locked in solitary for three years. You don't get anything no matter what. And so that is not consistent with the Supreme Court's precedent. Now, with regard to the Eighth Amendment claim, you also say it's a new context to the extent that it goes beyond the medical treatment aspect of the claim. Can you help me understand how you're bifurcating the Eighth Amendment claim? Sure. The district court actually did that itself. I'm not sure that it's totally right. Why don't you tell me what you think would be totally right? What I think is right is it's a single Eighth Amendment claim. It alleges a series of compound violations of his constitutional rights over whole history. Maybe you can bifurcate it the way that the district court did into his medical injuries, one of which is his tooth that he didn't get treatment for for some length of time even though he was unable to sleep. So that is clearly a medical claim. The rest of it is maybe slightly different from Carlson in that there were not – that was a case where the inmate died of asthma. Maybe these claims are slightly different in that they involve extended confinement, harsh treatment, et cetera. And the Supreme Court has, in Ziegler, read the new context fairly narrowly. So. We say that at least the dental claim, the medical issues are not a new context. The other stuff may be just because of how it's been defined by the Supreme Court. Could you define what the other stuff is? The length of his confinement, the cold treatment in his cells, the lack of exercise, lack of natural light, and eventually he wastes away in solitary confinement and is unable to exercise, and that leads eventually to a knee injury. Yes, we can see that the stuff other than the medical claims are a new context. Can I call those conditions of confinement claims for just a shorthand to refer to them? Sure, go ahead. Are you aware of what other circuits have, before Abbasi, have other circuits recognized claims like that, conditions of confinement claims, in the Bivens context? I don't have a case top of mind. I'm glad to look and maybe submit a 28J if that would be helpful. Maybe I'll ask both sides if they could. So a week from today, if you could submit a two-page letter just informing us. I didn't see it in either set of briefs, but I'd be interested in knowing whether conditions of confinement claims before Abbasi had been recognized in the Bivens context. And you can submit a two-page letter and the government can respond a week later. Thank you. If there are no more questions, I'll reserve my time. Thank you. May it please the Court. Mike Shee for Defendants Hastie, Sherman, Ortiz, Barrer, and White. The district court correctly applied the Supreme Court's watershed decision in Abbasi because both of Mr. Gonzalez's asserted Bivens claims arise in new contexts. Once they do, the inquiry becomes whether there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy in those contexts, and there are plenty of reasons here to doubt that Congress would have wanted a damages remedy. That's a new context because of the very narrow way in which the Supreme Court in Abbasi uses the context inquiry. So the Supreme Court in Abbasi was confronted with an argument that the plaintiff said was almost identical and practically indistinguishable from the Eighth Amendment claims in Carlson. The Supreme Court nevertheless held that even the modest difference between the contexts necessitated a new special factors inquiry. And some of the new developments that the Supreme Court cited were, for example, the enactment of the PLRA, which Congress had not yet enacted when Carlson was decided. The Supreme Court also pointed out that the particular violation of the Constitution alleged by the Abbasi plaintiffs was different from the violation alleged by the Carlson plaintiff. And so those alone were sufficient to warrant a new special factors analysis. Yes. What do you say about the Malesko decision in the Supreme Court where the Chief Justice Rehnquist said that if a federal prisoner in a BOP facility alleges a constitutional deprivation, he may bring a Bivens claim against the offending individual officer? And there are a lot of lawsuits brought subsequent to that decision dealing with the conditions of confinement and whether or not the prisoner got the hearings to which he was entitled. That's gone now as a result of the or recently? It's not necessarily gone, Your Honor. And to be clear, the upshot of our position is not that there shall be no Bivens claims going forward. The upshot of our position is simply that Abbasi dramatically changed the law undergirding when a Bivens remedy may be implied. And so before a court may imply a Bivens remedy, it is not enough that a court of appeals, for example, may have decided that there could have been a Bivens action available in a particular context. The only question is whether the Supreme Court has recognized it. And if the answer to that is no, then there must be a new special factors inquiry along the lines of the special factors inquiry described in Abbasi. And so the fact that this Court in the Tellier case, for example, just assumed without deciding that a Bivens claim was available for a Fifth Amendment violation does not answer the question that Abbasi requires courts to ask specifically whether there are indeed special factors and reasons why Congress might not have wanted a damages remedy. And it might be helpful if I could walk through a couple of those that crosscut both of the Bivens claims here. The most important is that Mr. Gonzales has many alternative processes available to remedy both the Fifth and the Eighth Amendment violations he has alleged. For example, he was able to file in this circuit a habeas claim challenging the conditions. Some might, Your Honor. So as we noted in our brief, assuming he can get around the sovereign immunity waivers and so on, the FTCA might provide an avenue for Mr. Gonzales to seek money damages from the Federal Government. But one thing we do know, and this is also an important clarification, the other side has simply assumed for purposes of this litigation that an alternative process only suffices as a special factor if it gives adequate or equal compensation for the constitutional violation. And the Supreme Court has repeatedly rejected that view. In the Schweiker case, it's important to note that the Supreme Court at the very end of the opinion, of the majority opinion, says, you know, the entire crux of this case is that plaintiffs are alleging that there was a constitutional violation and they're not going to be adequately compensated for it. But Congress is the entity that gets to make that judgment, and it is not for the judiciary to second-guess it. And in Abbasi, too, it's — Right. So the only thing that the PLRA permits the inference for with respect to Carlson, right? And Congress was quite aware that those claims would go forward. But as Abbasi makes quite clear, the argument about the PLRA gets the burdens of the parties exactly backwards. So now, after the Supreme Court's Abbasi decision, we've rejected the ancien regime where a damages action could just be presumed. Now there is no damages action unless the other side can come up with a very compelling reason to think that Congress would have wanted it. And as Judge Livingston pointed out in an earlier colloquy with opposing counsel, every time Congress has had the opportunity to consider whether or not to create a money damages action against Federal BOP officials akin to 1983 for constitutional violations, it is refused. To the contrary, in the CREPA statute from 1980, which was the first thing in the Prison Rape Elimination Act and so on. So all of this indicates that given the opportunity and given all of the supervision that Congress has had in this area, Congress still chose not to create the remedy that Mr. Gonzalez now urges this Court to create of its own volition. Could you go back and address the — and you started with this, but I'll bring you back to it — the — why exactly — what the argument is that the medical treatment aspect of the Eighth Amendment claim presents a new context? Because I'm having difficulty understanding why this isn't squarely within Carlson. I see. So in Carlson, Your Honor, here were the relevant facts. The inmate had a serious and chronic asthmatic condition that the BOP officials knew about, but nonetheless they confined him somewhere with inadequate facilities. But that wasn't the heart of the claim. The heart of the claim was that when the prisoner had the asthma attack, the BOP officials failed to respond adequately and indeed gave him a broken respirator. And so the prisoner sadly died as a result of those actions or the failure to treat actions of the BOP officials in that circumstance. That's quite different from the allegations that Mr. Gonzalez has raised here, that he had some lingering tooth pain that at some point necessitated surgery or that because his shoes didn't have shoelaces, at some point down the line he had muscular weakness that necessitated knee surgery. Those are the sorts of claims that arise in a different context because they don't present the same sort of emergency situation. Now, I think it's the emergency nature of it, Judge Chin, that provides the easiest way to see why the context is new. But no mistreatment if it's over a long period of time? No. So I'm sorry. Let me try to be clear. All that we're saying is that Carlson allows the sidestepping of the special factors inquiry when a factual pattern emerges that's similar to Carlson. But this factual pattern is dissimilar in the sense that instead of an emergency situation necessitating quick medical decision-making that resulted in death, we had chronic medical conditions that he could have sought relief for through alternative processes such as the habeas remedy, such as the administrative remedy program and all of those other processes that we've identified in our brief. So Abbasi itself, and correct me if I'm missing something, when it characterizes Carlson, it doesn't use the word emergency. It refers to this as a failure to treat. The claim against prison officials for failure to treat an inmate's asthma, and I don't think you're arguing that it's limited to asthma. Oh, no, of course not, Your Honor. So it seems, why isn't it simply a failure to treat claim and not necessarily an emergency? Because the Supreme Court said, and, you know, you don't have to take my word for it, when it looks at Carlson, it says, you know, even what this Court might perceive as minute factual differences cannot circumvent the special factors inquiry. And so all we're saying is that because the factual circumstances are different, the special factors inquiry must take place, can't just be controlled by Carlson. And indeed, you know, in Abbasi's other section discussing Carlson, they themselves say that Carlson, if decided today, may have come out a different way. So that's why we're standing here suggesting that there needs to be some more sensitivity to the need to have a special factors inquiry, even in circumstances that might seem difficult to distinguish from Carlson's facts. Before you sit down, can I ask you about the due process claims? Of course. The suggestion, the strong suggestion, that Mr. Gonzalez was being victimized by Ward and Hastie. Ward and Hastie made up his mind that he was going to stay in special housing, segregated units, because of the attack. And there was no conditions which would remediate Hastie's, or excuse me, Gonzalez's being held in the shoe. That's right, Your Honor. So a couple of answers. The first is I want to just put this marker down. The Court doesn't need to reach the question, because for the reasons I just gave, there is no Bivens remedy for the particular Fifth Amendment violation that your question encompasses. But setting that aside and assuming the Court disagrees with that premise, you know, those allegations might be sufficient to surmount 12b-6, Your Honor. But, you know, discovery has occurred. And after discovery, there has been no actual evidence adduced to suggest that Ward and Hastie's mind was not susceptible to change. If you do a close look at the citations that we give on this point in our brief, you'll see that all the other side has pointed to are just general statements of the ordering of authority. So Ward and Hastie is the individual with whom the buck stops, and everybody else's decision is subordinated to that of the warden. But the record also reveals that every week Ward and Hastie convened a meeting where everybody could raise issues with respect to prisoners. A lot of psychological individuals were permitted to present their reports. A lot of the lieutenants were permitted to present their reports. The captains could present their reports. It's quite different from the situation that the other side has sketched out, that this Court addressed in the Proctor case in 2017, where there was evidence in a deposition where they asked the warden or the State prison officials, was there anything that could be done to justify removing Mr. Gonzalez? And they said, nope, there is nothing that could be done. So at the end of the day, the argument with respect to the due process really appears to be that, you know, a good process would have resulted in the release of Mr. Gonzalez. But as Warden Hastie himself said, Mr. Gonzalez was in the special housing unit because he had repeatedly stabbed another individual with a 10-inch shank in what Warden Hastie characterized as the worst assault he had seen in his tenure as a warden. And it's important also that Mr. Gonzalez at no point has challenged the merits of that decision. So for these reasons, if the Court decides to disregard the Abbasi framework and create a new Bivens remedy in this context, Warden Hastie and the other defendants I represent would still be entitled to qualified immunity. Unless the Court has further questions, we ask that the judgment of the district court be affirmed. Thank you. Thank you, Your Honors. Just a couple points in response. On the last item, I think that if you go back and look at the deposition testimony of Officers Lopresti and Ortiz, you will see that what they testify to is that if the warden said that this gentleman was going to stay in SHU, he was going to stay in SHU. And we can debate about what that meant, whether that was chain of command or something else, but this is a summary judgment case, and so that's not a decision for this court to make. It's a decision for the jury to make. And so we need remand for trial on that issue. My opposing counsel cited the FTCA. I just want to point out that that is off the table because of Carlson. Carlson holds that that is not a replacement remedy, and that's not been overruled. With respect to the administrative remedies, that also is, as I was saying earlier, that is part of the entire remedial regime of which Bivens is the endpoint. The Supreme Court has held that in the McCarthy v. Madigan case, and so that is also off the table. Habeas is off the table because it does not provide any remedy for the past violations of Mr. Gonzalez's rights. And even more importantly, given that the purpose of Bivens is deterrence, Habeas provides no deterrent remedy, no reason for anyone, any prison official to respect inmates' rights with respect to due process, and particularly with respect to the Eighth Amendment. And so all of the alternative remedies that they have suggested might be available really are not. They don't provide any relief at all. And so they cannot possibly replace a Bivens remedy, which, again, Congress assumed existed when it enacted the PLRA. So Congress did not need to enact a new damages remedy. Congress looks at the case law and says, oh, it's already there. We just have to put an exhaustion requirement in front of it, and then we'll be happy. And so that's what they did. They left the Bivens remedy in place, and we respectfully suggest that you should therefore reverse and remain for trial. Thank you both. We'll take it under submission. Well argued. And thank you for your pro bono help to the Court.